DARNELL v AUTO-OWNERS INSURANCE COMPANY

Docket No. 75536. Submitted October 11, 1984, at Lansing.—Decided April 15, 1985.

Plaintiff Timothy Darnell's wife, Sheila Darnell, had executed an application for automobile insurance on behalf of plaintiff with defendant Auto-Owners Insurance Company on April 1, 1980. Mrs. Darnell told the agent for Auto-Owners that the only party to be insured under the policy was plaintiff. She was asked whether any drivers in her household had had their licenses revoked, restricted or suspended within the last three years and she answered the question in the negative. A certificate of insurance was issued on April 1st to plaintiff as the named insured. Mrs. Darnell did not know at that time that her husband had a restricted license. Soon thereafter, on April 12, 1980, plaintiff sustained injuries when a vehicle struck him from behind while he was hand-pushing another automobile. On April 14, 1980, Auto-Owners issued the policy of automobile insurance to plaintiff, although it had obtained plaintiff's driving record on April 10, 1980, and learned that his license had been restricted from April 25, 1978, through July 24, 1978. Moreover, plaintiff's license expired on his birthday, April 20, 1980, because he was in the hospital and unable to renew it. Accordingly, on April 28, 1980, Auto-Owners' sales agency sent a notice of cancellation to plaintiff, stating that the cancellation was due to the fact that there was no licensed driver in the household. The cancellation was to be effective May 19, 1980. Mrs. Darnell, however, obtained her license, paying the ticket that had resulted in her license suspension, and requested that the insurance not be cancelled as of May 19, 1980. Subse-

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobile Insurance §§ 45-52.
   43 Am Jur 2d, Insurance §§ 430, 431.
[2] 43 Am Jur 2d, Insurance § 1011 *et seq.*
[3, 5] 7 Am Jur 2d, Automobile Insurance § 345.
[4, 5, 7] 7A Am Jur 2d, Automobile Insurance § 443.
   44 Am Jur 2d, Insurance § 1781 *et seq.*
[5] Automobile insurer's liability for statutory excess interest for delayed payment of no-fault claim. 14 ALR4th 761.
[6] 45 Am Jur 2d, Interest and Usury §§ 59, 60.

quently, Auto-Owners learned that Mrs. Darnell's driver's license had been suspended on August 2, 1977, and was not reinstated until April 30, 1980. On May 12, 1980, Auto-Owners sent a letter to plaintiff and his wife denying plaintiff insurance benefits and claiming that the policy was void *ab initio* due to alleged material misrepresentations in the application for insurance. However, Auto-Owners received Mrs. Darnell's driving record on May 13, 1980. Plaintiff commenced an action in the Ingham Circuit Court against Auto-Owners, Dairyland Insurance Company, the insurer of the vehicle that struck him, and State Farm Mutual Automobile Insurance Company, which had been assigned the claim by the assigned claims facility. State Farm filed a cross-claim against Auto-Owners, contending that Auto-Owners could not rescind the insurance policy inasmuch as a no-fault policy cannot be rescinded following an accident involving an insured, and alleging that Auto-Owners did not use reasonable diligence in investigating the Darnells prior to the accident and that the grounds for cancellation were unrelated to the cause of the accident. State Farm filed a motion for summary judgment to fix liability for no-fault benefits as to Auto-Owners. The trial court, Robert Holmes Bell, J., granted the motion, finding that provisions of the no-fault act, public policy concerning the application of the provisions of the no-fault act and a prior decision of the Court of Appeals precluded Auto-Owners from voiding plaintiff's policy *ab initio*. Auto-Owners sought to set aside the order granting State Farm's motion for summary judgment. That motion was denied. Auto-Owners applied for leave to appeal, which was denied. Plaintiff filed a motion seeking to recover attorney fees from defendants. The trial court granted plaintiff's motion. Subsequently, State Farm filed a motion seeking recovery from Auto-Owners of the no-fault benefits (totalling $76,041.72) which it had paid on behalf of plaintiff. State Farm also sought actual attorney fees, interest, and loss adjustment costs and other taxable costs. Auto-Owners tendered payment of all the personal injury protection benefits that State Farm had paid on July 27, 1983, but did not tender any amount for interest or the other expenses claimed by State Farm. State Farm then filed an amended motion for summary judgment seeking penalty attorney fees, penalty interest and other costs. The trial court found that Auto-Owners was not liable for the fees and interest sought by State Farm. Auto-Owners appealed and State Farm cross-appealed. *Held:*

1. An insurer may rescind an insurance policy and declare it void *ab initio* where the policy is procured through the insured's intentional misrepresentation of a material fact in the application for insurance and the person seeking to collect the

no-fault benefits is the same person who procured the policy of insurance through fraud. The misrepresentation need not relate to the cause of an actual injury or loss in order to support rescission of the policy.

2. A claim of fraud against an insured bars only the claim of an insured who has committed the fraud and will not be read to bar the claim of any insured under the policy who is innocent of fraud. Plaintiff made no misrepresentation, and coverage may not be denied him on the basis of his spouse's improper actions. Summary judgment in favor of plaintiff was proper.

3. Attorney fees may be charged to an insurer, under the no-fault automobile insurance act, if the court finds that the insurer unreasonably refused to, or unreasonably delayed in, making proper payment, but there is no unreasonable delay if the insurer demonstrates a legitimate question of statutory construction, constitutional law, or bona fide factual uncertainty. The preferred method of resolution of priority questions between two insurers is for one of the insurers to pay the claim and sue the other in an action of subrogation. Problems of priority among insurers should not cause delay in payment of benefits to which the claimant is entitled. The trial court's finding of unreasonableness in delaying payment as to Auto-Owners was not clearly erroneous and the award of attorney fees to plaintiff is proper.

4. An insurance company acting as the assigned claims facility representative is not entitled to an award of attorney fees or penalty interest from an insurer which has been found to be first in priority for liability in paying no-fault benefits and has unreasonably delayed or refused to pay.

5. State Farm's acceptance of Auto-Owners' tender resulted in a settlement waiving interest which might otherwise have been recoverable.

6. The assigned claims facility representative is not permitted to recover the loss adjustment cost of a claim from the insurer found to be primarily liable for the claim.

Affirmed.

1. INSURANCE — RESCISSION — FRAUD.

An insurer may rescind an insurance policy and declare it void *ab initio* where the policy is procured through the insured's intentional misrepresentation of a material fact in the application for insurance and the person seeking to collect the no-fault benefits is the same person who procured the policy of insurance through fraud; the misrepresentation need not relate to

the cause of an actual injury or loss in order to support rescission of the policy.

2. INSURANCE — FRAUD.

A fraud by an insured can bar only the claim of an insured who has committed the fraud and will not be read to bar the claim of an any insured under the policy who is innocent of fraud.

3. INSURANCE — NO-FAULT INSURANCE — ATTORNEY FEES.

Attorney fees may be charged against an insurer, under the no-fault automobile insurance act, if the court finds that the insurer unreasonably refused to, or unreasonably delayed in, making proper payment, but there is no unreasonable delay if the insurer demonstrates a legitimate question of statutory construction, constitutional law, or bona fide factual uncertainty (MCL 500.3148; MSA 24.13148).

4. INSURANCE — PRIORITY OF INSURERS.

The preferred method of resolution of priority questions between two insurers is for one of the insurers to pay the claim and sue the other in an action of subrogation; problems of priority among insurers should not cause delay in payment of benefits to which the claimant is entitled.

5. INSURANCE — NO-FAULT INSURANCE — INTEREST — ATTORNEY FEES — ASSIGNED CLAIMS FACILITY.

An insurance company acting as the assigned claims facility representative is not entitled to an award of attorney fees or penalty interest from an insurer which has been found to be first in priority for liability in paying no-fault benefits and has unreasonably delayed or refused to pay.

6. JUDGMENTS — INTEREST — SETTLEMENT.

A settlement before judgment waives the right to statutory interest on the amount recovered because no final judgment was rendered against the defendant.

7. INSURANCE — NO-FAULT INSURANCE — ASSIGNED CLAIMS FACILITY — LOSS ADJUSTMENT COST.

The assigned claims facility representative is not permitted to recover the loss adjustment cost of a claim from the insurer found to be primarily liable for the claim.

*Fraser, Trebilcock, Davis & Foster* (by *Ronald R. Sutton* and *Helen Currie Foster*), for Auto-Owners Insurance Company.

*Fowler, Tuttle & Harley* (by *David M. Clark),* for Dairyland Insurance Company.

*Willingham, Coté, Hanslovsky, Griffith & Foresman, P.C.* (by *John A. Yeager),* for State Farm Mutual Automobile Insurance Company.

Before: DANHOF, C.J., and GRIBBS and J. W. FITZGERALD,* JJ.

DANHOF, C.J. On September 4, 1980, plaintiff, Timothy Darnell, brought this action to recover no-fault personal injury protection (PIP) benefits after he sustained injuries on April 12, 1980, by being hit by an automobile while hand-pushing another vehicle. Plaintiff sued defendant Auto-Owners (his insurer), defendant Dairyland Insurance Company (the insurer of the vehicle that struck him) and State Farm Mutual Automobile Insurance Company (the assigned claims insurer that had been assigned the claim by the assigned claims facility, pursuant to MCL 500.3171 *et seq.;* MSA 24.13171 *et seq.).* After extensive proceedings in this matter, the trial court ruled that defendant Auto-Owners was liable for the payment of no-fault benefits to plaintiff and granted plaintiff's motion for attorney fees and costs.

On September 7, 1983, the trial court also denied a motion by defendant State Farm to recover attorney fees, interest and loss adjustment costs from defendant Auto-Owners. Defendant State Farm appeals from the trial court's denial of its request for attorney fees from Auto-Owners, and Auto-Owners appeals the lower court's ruling that the policy of insurance issued to plaintiff could not

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment.

be voided *ab initio* despite misrepresentations made by plaintiff in his application for insurance.

Plantiff's wife, Sheila Darnell, executed an application for automobile insurance on behalf of plaintiff with defendant Auto-Owners on April 1, 1980. Mrs. Darnell testified that she told the agent at Financial Services Center, Inc., that the only party to be insured under the policy was plaintiff. She was asked whether any drivers in her household had had their licenses revoked, restricted or suspended within the last three years; she answered the question in the negative. A certificate of insurance was issued on April 1st to plaintiff as the named insured. Mrs. Darnell stated that, at that time, she did not know her husband had a restricted license.

Soon thereafter, on April 12, 1980, plaintiff sustained injuries when a vehicle struck him from behind while he was hand-pushing another automobile. On April 14, 1980, Auto-Owners issued the policy of automobile insurance to plaintiff, although it had obtained plaintiff's driving record on April 10, 1980, and learned that his license had been restricted from April 25, 1978, through July 24, 1978. Moreover, plaintiff's license expired on his birthday, on April 20, 1980, as he was in the hospital and unable to renew it. Accordingly, on April 28, 1980, Auto-Owners' sales agency sent a notice of cancellation to plaintiff, stating that the cancellation was due to the fact that there was no licensed driver in the household. The cancellation was to be effective May 19, 1980. Mrs. Darnell, however, obtained her license, paid the ticket that had resulted in her license suspension and requested that the insurance not be cancelled as of May 19, 1980. Subsequently, Auto-Owners learned that Mrs. Darnell's driver's license had been sus-

pended on August 2, 1977; it was not reinstated until April 30, 1980.

Then, on May 12, 1980, Auto-Owners sent a letter to plaintiff and his wife denying plaintiff insurance benefits and claiming that the policy was void *ab initio* due to alleged material misrepresentations in the application for insurance. However, Auto-Owners states that it received Mrs. Darnell's driving record on May 13, 1980.

Plaintiff commenced this action on September 4, 1980. On October 9, 1980, defendant State Farm filed a cross-claim against Auto-Owners, contending that Auto-Owners could not rescind the insurance policy inasmuch as a no-fault policy cannot be rescinded following an accident involving an insured; Auto-Owners did not use reasonable diligence in investigating the Darnells prior to the accident; and the grounds for cancellation were unrelated to the cause of the accident. On September 3, 1981, State Farm filed a motion for summary judgment to fix liability for no-fault benefits as to Auto-Owners. This motion was heard on October 14, 1981, and the trial court granted the motion.

In its opinion from the bench, the trial court found that provisions of the no-fault act, public policy concerning the application of the provisions of the no-fault act and this Court's decision in *Frankenmuth Mutual Ins Co v Latham,* 103 Mich App 66; 302 NW2d 329 (1981), precluded Auto-Owners from voiding plaintiff's policy *ab initio.* Auto-Owners sought to set aside the order granting State Farm's motion for summary judgment. This motion was denied. Auto-Owners applied to this Court for leave to appeal on January 4, 1982. On June 18, 1982, this Court denied the application for leave to appeal.

On December 27, 1982, plaintiff filed a motion

seeking to recover attorney fees from defendants pursuant to MCL 500.3148; MSA 24.13148. The trial court granted plaintiff's motion in a written opinion dated May 13, 1983. Subsequently, State Farm filed a motion seeking recovery from Auto-Owners of the no-fault benefits (totalling $76,041.72) which it had paid on behalf of plaintiff. State Farm also sought actual attorney fees pursuant to § 3148, interest pursuant to MCL 500.3148; MSA 24.13148, interest pursuant to MCL 600.6013; MSA 27A.6013, and loss adjustment costs and other taxable costs.

Auto-Owners tendered payment of all the personal injury protection benefits that State Farm had paid on July 27, 1983, but did not tender any amount for interest or the other expenses claimed by State Farm. State Farm then filed an amended motion for summary judgment seeking penalty attorney fees, penalty interest and other costs. The trial court heard State Farm's motion on September 7, 1983, and found that Auto-Owners was not liable for the fees and interest sought by State Farm. This appeal ensued.

Preliminarily, we note that State Farm's motion for summary judgment as to Auto-Owners' liability (joined in by Dairyland) was brought under GCR 1963, 117.2(1), (2) and (3). Although we hold that the lower court applied an erroneous standard of law, we find that the result reached was proper, and, therefore, pursuant to GCR 1963, 820.1(7), we affirm the order of summary judgment in favor of plaintiff.

In the instant case, while recognizing that at the time of decision below the lower court did not have benefit of the *Cunningham, infra,* and *United Security, infra,* decisions, we nevertheless reject the lower court's conclusion that the policy of insurance could not be voided once an accident occurred

or where the alleged misrepresentation of fact had no ostensible relation to the accident which occasioned the injury.

Where a policy of insurance is procured through the insured's intentional misrepresentation of a material fact in the application for insurance, and the person seeking to collect the no-fault benefits is the same person who procured the policy of insurance through fraud, an insurer may rescind an insurance policy and declare it void *ab initio. Cunningham v Citizens Ins Co of America*, 133 Mich App 471; 350 NW2d 283 (1984); *United Security Ins Co v Comm'r of Ins*, 133 Mich App 38; 348 NW2d 34 (1984). A policy of no-fault insurance does not become absolute once an injury arises so long as there are no innocent third-party claimants involved. Accordingly, we reject the lower court's first ground for refusing to allow voidance of the policy.

We also reject the lower court's second ground for disallowing rescission. The nature of the misrepresentation need not causally relate to the accident which results in injury. See the discussion in *Auto-Owners Ins Co v Comm'r of Ins*, 141 Mich App 776; 369 NW2d 896 (1985), a case involving the same policy of insurance, in which we rejected this notion.

Nevertheless, we hold that rescission was improper in the instant case. An insurer may only void a policy of insurance *ab initio* where an innocent third party is not affected thereby and where it can be shown that the insured *intentionally* misprepresented a *material* fact communicated at the time of effecting the insurance; that is, where such misrepresentation substantially increased the risk of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium. Here, Auto-Owners re-

ceived plaintiff's driving record on April 10, yet issued the policy of insurance on April 14. Moreover, with respect to Mrs. Darnell, Auto-Owners gave notice on May 12 that it was rescinding the policy *ab initio;* however, it also stated that it did not receive Mrs. Darnell's driving record until May 13. It thus seems highly unlikely that it was her driving record which prompted Auto-Owners to rescind the policy. And, Mrs. Darnell's misrepresentation as to plaintiff's driving record, as a matter of law, was not material since Auto-Owners' very action of issuing the policy with knowledge of plaintiff's record belies any contention that it would have rejected the risk or charged an increased premium. Accordingly, the misrepresentations of Mrs. Darnell were not material, based upon Auto-Owners' actions.

Of most importance, however, is that, because plaintiff himself made no misrepresentation, Auto-Owners must justify rescission on the basis of Mrs. Darnell's statements. But, Mrs. Darnell's misrepresentation does not affect plaintiff's coverage. Auto-Owners argues that it was authorized to void the policy *ab initio* on the basis of the insured's agent's (Mrs. Darnell's) misrepresentation of a material fact. Auto-Owners reasons that plaintiff would not have been insured but for the misrepresentation of his wife who, in addition to being his agent, was a contractual insured under the policy. However, "only the claim of an insured who has committed the fraud" will be barred, leaving unaffected "the claim of any insured under the policy who is innocent of fraud". *Morgan v Cincinnati Ins Co,* 411 Mich 267, 277; 307 NW2d 53 (1981). Accord, *Crossley v Allstate Ins Co,* 139 Mich App 464; 362 NW2d 760 (1984). Consequently, while we certainly do not countenance the actions of Mrs. Darnell in this case, the fact remains that plaintiff

made no misrepresentation, and coverage may not be denied him on the basis of his spouse's improper actions. We hold that summary judgment was properly granted in favor of plaintiff below, albeit the lower court's reason therefor was erroneous.

We next turn to Auto-Owners' claim that the lower court erred in ordering it to pay attorney fees pursuant to § 3148 of the no-fault act. Auto-Owners reasons that, in light of the recent decisions, noted above, which recognized that an insurer may void a policy of insurance *ab initio,* it is clear that Auto-Owners did not unreasonably refuse or delay in making the payments to plaintiffs. Dairyland was also assessed attorney fees, whereas State Farm was found not to have unreasonably delayed payment.

It is well-settled law in this state that refusal or delay in making payment is not unreasonable where "the insurer demonstrates a legitimate question of statutory construction, constitutional law, or even a bona fide factual uncertainty". *Wood v DAIIE,* 99 Mich App 701, 708; 299 NW2d 370 (1980), *aff'd with modifications* 413 Mich 573; 321 NW2d 653 (1982). Moreover, a lower court's finding of unreasonable refusal or delay in making payment will not be disturbed on appeal unless clearly erroneous. *Liddell v DAIIE,* 102 Mich App 636, 650; 302 NW2d 260 (1981), *lv den* 411 Mich 1079 (1981).

The trial court in the instant case found that the factual situation presented here was closely analogous to that presented in *Kalin v DAIIE,* 112 Mich App 497; 316 NW2d 467 (1982), *lv den* 417 Mich 853 (1982), and found this Court's reasoning in that case to be determinative. In *Kalin,* the plaintiff was struck by another vehicle as he was pushing a handcart loaded with beer along the

side of his delivery truck. The plaintiff brought an action against his no-fault insurer and his employer's insurer, seeking to recover no-fault benefits for the injuries he had sustained. After determining that the employer's insurer was liable for the payment of no-fault benefits, the lower court held that each insurer was to pay half of the plaintiff's attorney fees. On appeal, this Court reversed the trial court on the issue of liability, but rejected the employer's insurer's contention that, since it had been found not to be liable for the payment of benefits, it should not be liable for half of the plaintiff's reasonable attorney fees. This Court's holding was premised on the fact that the underlying question was one of priority, not of whether plaintiff was entitled to no-fault benefits. It was noted that insurance companies can avoid liability for attorney fees by sharing in the payment of no-fault benefits and then settling the priority question between themselves.

Initially, we note that, in light of our holding that Auto-Owners improperly rescinded plaintiffs' policy of insurance under the facts of the instant case, its argument that it was ultimately correct and therefore justified in denying benefits is inapposite. In any event, *Kalin, supra,* instructs that, even where an insurer prevails on the primary issue on appeal after having attorney fees levied against it pursuant to § 3148, it is not automatically free from liability for the payment of the attorney fees. Problems of priority among insurers should not cause delay in payment of benefits to which the claimant is entitled. See, also, *Allstate Ins Co v Citizens Ins Co of America,* 118 Mich App 594, 603-604; 325 NW2d 505 (1982); *Federal Kemper Ins Co v The Western Ins Co,* 97 Mich App 204, 208; 293 NW2d 765 (1980), for the proposition that priority claims should be handled by paying

the insured and having the insurance companies thereafter dispute their liabilities.

The trial court in the instant case found that defendants Auto-Owners and Dairyland "definitely had a place in the priority sections" and that payment should have been made because plaintiff was entitled to no-fault benefits from someone.[1] In light of *Kalin, supra,* we agree. The lower court's finding of unreasonableness as to Auto-Owners was not clearly erroneous. State Farm was not assessed attorney fees as it had no obligation to pay benefits until it had been determined that no personal protection insurance was applicable to plaintiff's case. MCL 500.3172; MSA 24.13172.

Next, State Farm asserts on cross-appeal that it was entitled to no-fault penalties and that, therefore, the lower court erred in denying it such. It argues that it is in a different position when it represents the interest of the state assigned claims facility than if it were representing its own interest as an ordinary no-fault insurer: as an assigned claims insurer, it is in the position of its subrogee to the extent that it has paid no-fault insurance

---

[1] Even assuming plaintiff's policy was properly rescinded, in the case *sub judice,* none of the insurers disputed plaintiff's entitlement to personal injury protection benefits. Nor did the facts prevailing in the instant case in any way appear to support a denial of such benefits. "An owner is entitled to PIP benefits, although he has not insured his vehicle, if he suffers injury in a motor vehicle accident while he is a pedestrian, a bicyclist, a motorcyclist, or a passenger in another vehicle." *Heard v State Farm Ins Co,* 414 Mich 139, 145; 324 NW2d 1 (1982). This is based on MCL 500.3113; MSA 24.13113, which disqualifies uninsured motorists from PIP benefits where the uninsured motor vehicle was "involved in the accident".

As a result, even if voiding plaintiff's policy *ab initio* were to leave him as an uninsured owner within the meaning of § 3113 of the no-fault act, there being no dispute that plaintiff's uninsured vehicle was *not* involved in the accident, plaintiff was entitled to no-fault benefits. *Heard, supra.* Accordingly, the only dispute was which of the insurers was legally responsible for payment of benefits. When this is the case, payment should first be made, with the insurers contesting priority thereafter. *Kalin, supra; Bach v State Farm Mutual Automobile Ins Co,* 137 Mich App 128; 352 NW2d 367 (1984).

benefits on behalf of the injured plaintiff. And since the no-fault act contains a reimbursement provision under which an assigned claims insurer is entitled to reimbursement from defaulting insurers to the extent of their financial responsibility, State Farm concludes that recovery of penalty costs and attorney fees is also permitted.

The statute which expressly provides for the payment of attorney fees in no-fault related cases is MCL 500.3148(1); MSA 24.13148(1), which provides:

"(1) An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment."

The statute makes it clear that the attorney who is entitled to fees is the attorney advising and representing the claimant in an action for PIP benefits which are overdue. By simply representing the assigned claims facility, it was not representing a "claimant" in an action for personal or property protection insurance benefits which were overdue. More importantly, the policy underlying the penalty provisions of the no-fault act do not support State Farm's claim.

It is clear that the purpose of the penalty provisions of the no-fault act was to insure that the *injured party* is promptly paid. *Allstate Ins Co v Citizens Ins Co of America* 118 Mich App 594, 607; 325 NW2d 505 (1982). In an effort to encourage such, the Legislature enacted the penalty provisions allowing for both the payment of attorney fees (where payment is unreasonably delayed) and

the payment of 12% interest on the overdue payment. See §§ 3148 and 3142. We do not believe that the Legislature contemplated payment of such under the circumstances inasmuch as the purpose of the penalty provisions is served by awarding attorney fees to the claimant, not the assigned claims facility representative.[2]

State Farm also asserts that the lower court erred in denying its motion for interest pursuant to MCL 600.6013; MSA 27A.6013 since it improperly relied on *Allstate Ins Co v Citizens Ins Co, supra,* which dealt only with interest pursuant to § 3142 of the no-fault act.

On July 6, 1983, State Farm filed a motion against Auto-Owners seeking to recover the no-fault benefits paid on behalf of plaintiff, attorney fees, loss adjustment costs, and other taxable costs. On July 27, 1983, Auto-Owners tendered payment of all the PIP benefits that State Farm had paid, but did not tender any payment for interest or State Farm's other expenses. Subsequently, State Farm filed an amended motion for summary judgment seeking, among the other expenses mentioned above, interest pursuant to MCL 600.6013; MSA 27A.6013. On September 7, 1983, the trial court denied plaintiff's motion and ruled that it

---

[2] State Farm argues that this Court's decision in *Harman v Ins Co of North America,* 106 Mich App 731; 308 NW2d 625 (1981), allows entities other than the injured claimant to recover under the no-fault act's penalty provisions. In that case, however, the State of Michigan was allowed to recover penalty interest under § 3142 of the no-fault act where it had intervened in an action brought by a mentally incompetent adult who had been permanently injured in a collision between an automobile and a bicycle he was riding. In *Allstate v Citizens, supra,* this Court distinguished *Hartman* on the basis that both the claimant and the state-intervenor shared in the award of penalty interest pursuant to § 3142. There is also no indication that the state's right to share in such benefits was ever raised in *Hartman.* We believe that the policy considerations behind § 3142, as noted in *Allstate, supra,* are equally applicable to § 3148, and that *Hartman* does not indicate a contrary purpose with respect to these provisions.

was not entitled to interest under § 6013. We agree.

MCL 600.6013; MSA 27A.6013 specifically states that "interest shall be allowed on *any money judgment recovered* in a civil action \* \* \*" (emphasis added). In the instant case, no judgment was rendered against Auto-Owners or the other insurance carrier for the sum involved. Auto-Owners voluntarily tendered the amount and State Farm voluntarily accepted it. Under these circumstances, § 6013 interest is not available to State Farm.

Section 6013 interest is considered part of the value of a judgment. *Bertilacci v Avery,* 42 Mich App 483; 202 NW2d 331 (1972), *lv den* 388 Mich 801 (1972). A settlement before judgment "waive[s] the right to statutory interest on [the] amount [recovered] because no final judgment was rendered against the [defendant]". *Awedian v Theodore Efron Mfg Co,* 66 Mich App 353, 358; 239 NW2d 611 (1976). State Farm's reliance upon *McGrath v Clark,* 89 Mich App 194; 280 NW2d 480 (1979), is to no avail. That case involved an offer of judgment pursuant to GCR 1963, 519.1, where this Court noted "that the rule will terminate the accumulation of interest", but not "eliminate interest altogether". 89 Mich App 198. No such offer pursuant to GCR 1963, 519.1 was involved here.

State Farm finds determinative the fact that it could have entered a judgment and recovered such interest and that it, in fact, requested such judgment in its amended motion for summary judgment. What State Farm could have done, would have done or should have done, however, is not relevant. We must assume State Farm was aware that § 6013 interest was allowable only upon a judgment and that acceptance before judgment of

the amount contested "traded off the loss of interest for the waiting period in exchange for the certainty of the settlement". *Silisky v Midland-Ross Corp,* 97 Mich App 470, 476; 296 NW2d 576 (1980). We find no error.

Finally, we turn to State Farm's claim that the lower court erred in denying its request for loss adjustment costs against Auto-Owners and Dairyland. State Farm suggests that, although loss adjustment costs are not specifically mentioned in § 3172, the statute does provide that a defaulting insurer must reimburse the assigned claims insurer to the extent of the defaulting insurer's financial responsibility. Therefore, State Farm concludes, loss adjustment costs should be regarded as part of the extent of the financial responsibility of a defaulting insurer and should be recoverable from the defaulting insurer inasmuch as Auto-Owners and Dairyland wrongfully caused State Farm to incur these costs by not promptly paying plaintiff. We find this argument to be without merit in that the Legislature has provided a statutory means for insurers to protect themselves against being unjustly caused to bear the costs incurred in the handling and disposition of assigned claims.

MCL 500.3176; MSA 24.13176, states:

"Reasonable costs incurred in the handling and disposition of assigned claims, including amounts paid pursuant to assessments under section 3171, shall be taken into account in making and regulating rates for automobile liability and personal protection insurance." (Footnote omitted.)

It is clear that through this section the Legislature has allowed insurers to include the costs incurred in the handling and disposition of as-

signed claims in their rate structure. It is also significant that the Legislature did not mention these costs in MCL 500.3172; MSA 24.13172, where it stated that the assigned claims insurer is "entitled to reimbursement from the defaulting insurers to the extent of their financial responsibility". Where the Legislature has expressly authorized the recovery of such costs by incorporating them into the rate-making process, we find the absence of any mention of such costs in § 3172 instructive. It should also be noted that the Legislature provided for the collection of loss adjustment costs in indemnity actions against uninsured motorists in MCL 500.3177; MSA 24.13177. Accordingly, we do not believe the Legislature contemplated that loss adjustment costs be recouped under § 3172.

Affirmed.