Per Curiam.
 

 Defendant Travelers Insurance Company appeals as of right the order granting summary disposition pursuant to MCR 2.116(C)(10) in favor of plaintiffs Regents of the University of Michigan and
 
 *723
 
 granting partial summary disposition in favor of defendant State Farm Mutual Insurance Company in this dispute over which of two no-fault automobile insurance companies are obligated to pay for the treatment of George Estes that was provided by plaintiffs through their University of Michigan Hospital and Health Center. State Farm cross appeals and challenges the order requiring State Farm to pay attorney fees and interest to plaintiffs. Plaintiffs also cross appeal and challenge the trial court’s calculation of interest.
 

 FACTS AND PROCEDURAL HISTORY
 

 On November 30, 1990, George Estes, a passenger in an automobile driven by Bobby Gibson and insured by State Farm, was involved in an automobile accident in Michigan. Estes was not a policyholder of any automobile insurance policy. Estes suffered serious injuries and was hospitalized until he succumbed to his injuries on January 4, 1991. Estes’ medical bills totaled $325,802.71.
 

 State Farm’s investigation revealed that Estes had been domiciled in the Tennessee home of his sister and brother-in-law, Lora Mae and Warren King. State Farm informed the Kings by letter in December 1991 that their automobile insurer was obligated to pay personal protection insurance benefits relating to Estes. The Kings forwarded the correspondence to Travelers in January 1992. On January 28, 1992, a Travelers claims representative forwarded correspondence to State Farm indicating that Estes resided with the Kings and qualified for Michigan no-fault benefits as a resident relative and that Travelers would assume responsibility of any first-party bene
 
 *724
 
 fits available to Estes. In July 1992, Travelers changed its position and informed State Farm by letter that it was denying Estes’ claim for personal protection insurance benefits.
 

 State Farm communicated its denial of benefits to plaintiffs in September 1993, but continued discussions with plaintiffs in an attempt to resolve the claim. In 1994, plaintiffs brought suit on behalf of the hospital against State Farm. That suit was later dismissed without prejudice after plaintiffs and State Farm continued to pursue settlement options.
 

 On April 15, 1998, plaintiffs filed the present suit against State Farm, Travelers, and the Assigned Claims Facility.
 
 [1]
 
 Plaintiffs alleged that Estes was not a policyholder of any automobile insurance policy. Plaintiffs alleged that Estes was a passenger in an automobile insured by State Farm at the time of the accident and that State Farm was obligated to reimburse plaintiffs for Estes’ medical expenses pursuant to MCL 500.3114(4), subsection 3114(4) of the no-fault automobile insurance act, MCL 500.3101
 
 et seq.
 
 In the alternative, plaintiffs alleged that Estes was domiciled with the Kings and Traveler’s was obligated to reimburse plaintiffs for Estes’ medical expenses pursuant to subsection 3114(1).
 

 On December 21, 1998, Travelers moved for summary disposition under MCR 2.116(C)(8) and (10). Initially, Travelers argued that plaintiffs’ claim was barred by the one-year statute of limitations contained in MCL 500.3145(1). In the alternative, Travelers argued that there was no question of fact that
 
 *725
 
 Estes was not domiciled with the Kings and had been living in Mississippi. Travelers attached an affidavit of Joann Willbanks, the Kings’ daughter and a resident of Tennessee, which indicated that Estes had been living in Strickland, Mississippi. Travelers also attached a letter dated July 15, 1992, advising State Farm that it was not responsible for payment of benefits to plaintiffs.
 

 On January 20, 1999, State Farm responded to Travelers’ motion and filed a cross-motion for summary disposition under MCR 2.116(C)(5), (7), and (10). Initially, State Farm argued that Travelers was responsible for payment of benefits to plaintiff for two reasons. First, Travelers was the responsible insurer because Estes was domiciled with the Kings. State Farm attached the affidavit of employee Kristina Myslinski and an investigative report that included summaries of statements obtained from Willbanks, Lora Mae King, and Carlette Hamm, another daughter of the Kings. State Farm argued that these statements indicated that Estes had a room in the Kings’ home where he kept his personal belongings, including clothing. State Farm further argued that there was evidence that Estes received his social security checks at the Kings’ home and had been in the King’s home just before leaving on his trip. Second, State Farm argued that Travelers was collaterally estopped from denying responsibility. State Farm relied on the January 28, 1992, letter it received from Travelers indicating that Travelers would assume full responsibility for payment of benefits because Estes resided with the Kings. State Farm also noted that Travelers did not actually deny responsibility for payment of benefits until July 1992.
 

 
 *726
 
 On January 22, 1999, plaintiffs also moved for summary disposition. Plaintiffs admitted that Estes’ domicile was a question of fact likely to preclude summary disposition. However, plaintiffs argued that it was ultimately entitled to recover the medical expenses and attorney fees and interest. Plaintiffs also responded to the motions for summary disposition filed by State Farm and Travelers, arguing that their claim was not barred by the statute of limitations because it was exempt from the statute pursuant to MCL 600.5821(4).
 

 On May 6, 1999, the trial court granted plaintiffs’ motion for summary disposition, denied Travelers’ motion for summary disposition, and granted in part State Farm’s motion for summary disposition. The trial court determined that subsection 5821(4) superseded the one-year limitation period in subsection 3145(1). The court reasoned that plaintiffs collectively were a political subdivision of the state of Michigan and brought this action to recover the cost of providing hospital services to Estes. The trial court also found that there was no genuine issue of material fact concerning Estes’ domicile. After reviewing all the documentary evidence submitted, the court determined that Estes was domiciled with the Kings. The court’s determination was based on evidence that Estes had his own room in the Kings’ home, that he kept his room locked, that the room contained his personal belongings, and that Estes used the Kings’ address on his Tennessee driver’s license and received his social security checks at the Kings’ address. The court reasoned that evidence concerning Estes’ trips to Mississippi was insufficient to establish a genuine issue of material fact. The court also
 
 *727
 
 granted plaintiffs’ request for interest and attorney fees under subsections 3142(3) and 3148(1), MCL 500.3142(3) and 500.3148(1), on the ground that the insurers’ actions were unreasonable.
 

 Following the trial court’s rulings, the parties entered into a partial settlement. The parties agreed that the reasonable charge for the medical expenses was $300,000 and that the reasonable amount for plaintiffs’ attorney fees was $15,866 through August 23, 1999. The parties also agreed to toll the interest from August 26, 1999, until plaintiffs filed the motion for entry of judgment.
 

 On September 27, 1999, plaintiffs moved for entry of judgment. Plaintiffs requested interest and attorney fees under subsections 3142(3) and 3148(1) and interest under § 6013 of the Revised Judicature Act, MCL 600.6013. Ultimately, the trial court concluded that Travelers and State Farm were both liable for attorney fees under subsection 3148(1) in the amount of $21,641. The trial court also concluded that Travelers was liable for interest under subsection 3142(3) in the amount of $279,616.
 
 [2]
 
 The court also found that plaintiffs were entitled to interest from both Travelers and State Farm at the fluctuating rate contained in MCL 600.6013(6).
 

 i
 

 Travelers first argues that the trial court erred in granting summary disposition in favor of plaintiffs. In
 
 *728
 
 reviewing a motion under MCR 2.116(C)(10), this Court must determine whether the evidence presented fails to establish a genuine issue of material fact entitling the movant to judgment as a matter of law.
 
 Arias v Talon Development Co,
 
 239 Mich App 265, 266; 608 NW2d 484 (2000). This Court should consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it.
 
 Weakley v Dearborn Heights,
 
 240 Mich App 382, 384; 612 NW2d 428 (2000).
 

 Travelers first contends that the trial court should not have considered Myslinski’s affidavit because the affidavit did not meet the requirements of MCR 2.119(B)(1)(c). MCR 2.119(B)(1)(c) provides that if an affidavit is filed in support of or in opposition to a motion, it must “show affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated in the affidavit.” Myslinski’s affidavit stated:
 

 1. That her investigative efforts in connection with the claim file involved here lead [sic] her to make inquiries to determine where George Estes indicating his residence was for purposes of the United States Government (i.e., The Social Security Administration) and the state of Tennessee (i.e., for his drivers license).
 

 2. That these investigations lead [sic] to documentation confirming that for both of these purposes Mr. Estes listed his residence and mailing address as the home of Lora Mae and Warren King.
 

 3. That copies of the materials received in confirmation of these facts are attached hereto as Exhibits A & B.
 

 Myslinski stated in her affidavit that she investigated the address used by Estes for social security and driver’s license purposes. She obtained two docu
 
 *729
 
 merits indicating that Estes used the Kings’ address. Myslinski could testify about these facts. Accordingly, the affidavit did not violate MCR 2.119(B)(1)(c).
 

 Travelers also contends that the trial court improperly considered the investigative report submitted by State Farm because the report is replete with inadmissible hearsay. Investigator Jack Wallace wrote the report after he interviewed Willbanks, Lora Mae King, and Hamm. Although the report contains inadmissible hearsay, MRE 801, any error in the admission of the report was harmless in light of the fact that State Farm ultimately submitted the affidavits of Mr. and Mrs. King, Willbanks, and Hamm within the one-week time limit imposed by the court.
 

 Last, Travelers argues that summary disposition was improperly granted because there is a genuine issue of material fact regarding Estes’ domicile. In granting the motion for summary disposition, the trial court stated in pertinent part:
 

 The evidence offered by Travelers and State Farm, evaluated in light of the criteria used by the Michigan Supreme Court and the Court of Appeals in the cases cited above, does not conclusively establish that Mr. Estes had a single, permanent residence, with the Kings or otherwise. A number of indicia to establish domicile, however, lead to the conclusion he was domiciled with the Kings. There is evidence to suggest that beginning about six months before his trip to Michigan and his death, Mr. Estes had another regular lodging place in Mississippi, but it is insufficient, without more, to create a genuine issue of material fact.
 

 In
 
 Dairyland Ins Co v Auto-Owners Ins Co,
 
 123 Mich App 675, 680; 333 NW2d 322 (1983), this Court explained the legal concept of domicile:
 

 
 *730
 

 Workman v Detroit Automobile Inter-Ins Exchange,
 
 404 Mich 477; 274 NW2d 373 (1979), is the only Michigan Supreme Court case interpreting the term “domicile” for the purposes of the no-fault act. That decision began its analysis by pointing out that for insurance purposes the term “domiciled in the same household” has no absolute or fixed meaning, and must be viewed flexibly in the context of the numerous factual settings possible.
 

 The Court noted that several factors should be considered in determining domicile, and that these factors should be weighed or balanced with each other because no one factor is determinative.
 

 “Among the relevant factors are the following: (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his ‘domicile’ or ‘household’ . . . ; (2) the formality or informality of the relationship between the person and the members of the household . . . ; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises . . . ; (4) the existence of another place of lodging by the person alleging ‘residence’ or ‘domicile.’
 
 Workman,
 
 pp 496-497. (Citations and footnote omitted).”
 
 [Dairyland, supra
 
 at 680-681.]
 

 In
 
 Farm Bureau Ins Co v Allstate Ins Co,
 
 233 Mich App 38, 40; 592 NW2d 395 (1998), the Court also found the following facts indicative of the accident victim’s domicile: the accident victim spent a significant amount of time at the home, the accident victim frequently slept there, the accident victim had her public assistance checks mailed to her residence, and the school where the accident victim’s children attended had the telephone number for that residence in its emergency contact information.
 

 
 *731
 
 Here, Myslinski’s affidavit indicated that Estes’ driver’s license listed the Kings’ address. It also indicated that Estes received his social security checks at the Kings’ home. Further, the affidavits of the Kings, Willbanks, and Hamm indicated that Estes had a room at the Kings’ home and received his mail at that address. Willbank’s affidavit indicated that Estes was a resident of Mississippi before the accident. Will-bank's affidavit, however, is insufficient to create a genuine issue of material fact. Although the affidavit suggests that Estes was present in Mississippi for a period before the accident, the affidavit does not provide any facts in support of a finding that Estes was or intended to be domiciled in Mississippi.
 

 n
 

 Travelers next argues that plaintiffs’ claim should be barred by the one-year statute of limitations for personal protection insurance benefits specified in subsection 3145(1). The trial court held that subsection 5821(4) superseded subsection 3145(1) and, therefore, plaintiffs’ claim was not barred. Whether plaintiffs’ claim is statutorily time-barred is a question of law for this Court to decide de novo.
 
 Ins Comm’r v Aageson Thibo Agency,
 
 226 Mich App 336, 340-341; 573 NW2d 637 (1997).
 

 MCL 500.3145(1) provides in part:
 

 An action for recovery of personal protection insurance benefits payable voider this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insur
 
 *732
 
 anee benefits for the injury. If the notice has been given or a payment ^has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor’s loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.
 

 MCL 600.5821(4) provides:
 

 Actions brought in the name of the state of Michigan, the people of the state of Michigan, or any political subdivision of the state of Michigan, or in the name of any officer or otherwise for the benefit of the state of Michigan or any political subdivision of the state of Michigan for the recovery of the cost of maintenance, care, and treatment of persons in hospitals, homes, schools, and other state institutions are not subject to the statute of limitations and may be brought at any time without limitation,
 
 the provisions of any statute notwithstanding.
 
 [Emphasis added.]
 

 There is no dispute that plaintiffs are collectively a political subdivision of the state of Michigan or that plaintiffs are seeking recovery of costs for Estes’ care and treatment while Estes was hospitalized. Therefore, plaintiffs have satisfied the requirements of subsection 5821(4). Travelers and State Farm argue, however, that plaintiffs cannot rely on the exemption from the statute of limitations in subsection 5821(4) because of the specific statute of limitations in subsection 3145(1).
 

 The primary goal of statutory interpretation is to give effect to the intent of the Legislature. The first step in that determination is to review the language of the statute itself. If the statute is unambiguous on its face, the Legislature will be presumed to have intended the meaning expressed, and judicial con
 
 *733
 
 struction is neither required nor permissible. Should a statute be ambiguous on its face, however, so that reasonable minds could differ with respect to its meaning, judicial construction is appropriate to determine the meaning.
 
 In re MCI Telecommunications Complaint,
 
 460 Mich 396, 411; 596 NW2d 164 (1999).
 

 Subsection 5821(4) specifically states that it applies, “the provisions of any statute notwithstanding.” The language of the statute clearly indicates that the Legislature intended to exempt the state and its political subdivisions from all statutes of limitation. Thus, subsection 5821(4) exempts plaintiff from the statute of limitations contained in subsection 3145(1). This reading of the statute is also consistent with common law. “At common law, the sovereign was exempt from the operation of statutes of limitation and remains exempt to this day in the absence of statutory authority.”
 
 In re Konke Estate,
 
 98 Mich App 249, 252; 296 NW2d 226 (1980).
 

 Travelers and State Farm also argue that MCL 600.5821(4) does not apply in this case because plaintiffs’ claim derives from Estes and Estes is subject to MCL 500.3145. We disagree. Although plaintiffs may have derivative claims, they also have direct claims for personal protection insurance benefits. See, e.g.,
 
 Munson Medical Center v Auto Club Ins Ass’n,
 
 218 Mich App 375; 554 NW2d 49 (1996) (under the no-fault act, when a person is injured in an automobile-related accident, a hospital that provides medical care is to be reimbursed by the injured person’s no-fault insurance company);
 
 LaMothe v Auto Club Ins Ass’n,
 
 214 Mich App 577, 585-586; 543 NW2d 42 (1995). Further, nothing in subsection 5821(4) limits the statute to “direct actions.”
 

 
 *734
 
 Travelers asserts, nonetheless, that the doctrine of laches applies to bar plaintiffs’ untimely claim. For laches to apply, Travelers must prove (1) a lack of diligence on plaintiffs’ part and (2) prejudice to the defendant.
 
 Jackson v Thompson-McCully Co, LCC,
 
 239 Mich App 482, 494; 608 NW2d 531 (2000). Here, the record indicates that plaintiffs exercised due diligence in attempting to resolve this matter. In correspondence dated January 28, 1992, Travelers indicated that it was responsible for payment of no-fault benefits because Estes was domiciled with the Kings. Travelers later recanted and also denied responsibility in 1992. Plaintiffs brought suit against State Farm in 1994. That suit was dismissed, without prejudice, because plaintiffs and State Farm were involved in settlement discussions. Eventually, questions arose concerning Estes’ domicile and State Farm denied responsibility, leading to this suit against both State Farm and Travelers in April 1998. Under these circumstances, we conclude that the doctrine of laches does not apply.
 

 m
 

 Travelers next contends that the trial court improperly awarded $279,616 in penalty interest under MCL 500.3142. Section 3142 provides:
 

 (1) Personal protection insurance benefits are payable as loss accrues.
 

 (2) Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the
 
 *735
 
 insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. For the purpose of calculating the extent to which benefits are overdue, payment shall be treated as made on the date the draft or other valid instrument was placed in the United States mail in a properly addressed, postpaid envelope or, if not so posted, on the date of delivery.
 

 (3) An overdue payment bears simple interest at the rate of 12% per annum.
 

 No-fault interest is awarded as a penalty for the insurer’s misconduct and is not intended to compensate the insured for damages.
 
 Attard v Citizens Ins Co of America,
 
 237 Mich App 311, 320; 602 NW2d 633 (1999). To recover interest, a plaintiff is not required to prove that the defendant acted arbitrarily or unreasonably delayed in payment of benefits.
 
 Fortier v Aetna Casualty & Surety Co,
 
 131 Mich App 784, 793; 346 NW2d 874 (1984). Instead, the statute “only requires that the insured present the insurer with reasonable proof of loss. If the insurer does not pay the claim within 30 days after receiving this proof, it becomes liable for interest.”
 
 Id.
 

 Here, Travelers acknowledged in a January 28, 1992, letter that it received notification of the automobile accident and even assumed the responsibility of payment of these benefits. This letter states, in part:
 

 We received a copy of your letter to our insured, dated December 11, 1991. Through our investigation we have established that the deceased, Mr. George Estes, resided with our insured and, therefore, qualifies for Michigan No-Fault Benefits.
 

 Our insured indicated that he has no further information concerning any of the medical bills, funeral expenses, etc .... Please advise if you have any of this information
 
 *736
 
 and/or if payment has been made for any of these services. Our file will assume the responsibility of any first party benefits available to the deceased Mr. Estes.
 

 This letter indicates that Travelers received reasonable proof of the fact that a loss was sustained, but also indicates that Travelers was not advised of the amount of the loss sustained. Subsection 3142(2) requires both to be present to allow an award of interest. Plaintiffs have presented no other evidence, besides this letter, that would allow this Court to conclude that Travelers was advised of the amount of loss before April 15, 1998, when this suit was filed. Hence, we conclude that plaintiffs are entitled to penalty interest under § 3142(3) calculated only from April 15, 1998. Accordingly, we vacate that portion of the order awarding interest under § 3142 and the case is remanded to the trial court for calculation of interest in accordance with this opinion.
 

 IV
 

 Travelers and State Farm maintain that the trial court erred in finding that Travelers and State Farm acted unreasonably and awarded attorney fees to plaintiffs pursuant to MCL 500.3148(1), which provides:
 

 An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney’s fee shall be a charge against the insurer in addition to the benefits recovered, if the
 
 court
 
 finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.
 

 
 *737
 
 Travelers first argues that whether defendants “unreasonably refused to pay the claim or unreasonably delayed in making proper payment” was a question for the jury and should not have been decided by the trial court. We disagree. Subsection 3148(1) specifically provides that the court should determine whether an insurer unreasonably refused to pay or unreasonably delayed in making payment. Thus, this was not a question for the jury.
 

 Defendants next argue that a legitimate question existed concerning Estes’ domicile and, therefore, their actions were not unreasonable and attorney fees should not have been awarded. “When determining whether attorney fees are warranted for an insurer’s delay to make payments under the no-fault act, a delay is not unreasonable if it is based on a legitimate question of statutory construction, constitutional law, or factual uncertainty.”
 
 Attard, supra
 
 at 317. Similarly, “[a]n insurer’s delay in making payments to an insured is not unreasonable where the delay is the product of a legitimate question of statutory construction, case law or a bona fide factual uncertainty.”
 
 Butt v DAIIE,
 
 129 Mich App 211, 220; 341 NW2d 474 (1983). However, when the only question is which of two insurers will pay, it is unreasonable for an insurer to refuse payment of benefits.
 
 Darnell v Auto-Owners Ins Co,
 
 142 Mich App 1, 12; 369 NW2d 243 (1985);
 
 Bach v State Farm Mut Automobile Ins Co,
 
 137 Mich App 128; 357 NW2d 325 (1984);
 
 Kalin v DAIIE,
 
 112 Mich App 497; 316 NW2d 467 (1982). In
 
 Kalin,
 
 this Court explained:
 

 Defendant Michigan Mutual, arguing that a delay in payment is not unreasonable “where it is the product of a legitimate question of statutory construction, constitutional law,
 
 *738
 
 or even a bona fide factual uncertainty,” insists that the trial court erred in ordering the payment of half of plaintiffs’ reasonable attorney fees. Although we concede that a “legitimate question” existed, we cannot agree with defendant’s contention that the delay in payment was the “product” of a legitimate question. Plaintiff was undoubtedly entitled to no-fault benefits; the only legitimate dispute was between the two defendant insurance companies. Under these circumstances insurance companies can avoid liability for attorney fees by sharing the payment of such a claimant’s no-fault benefits and then settling their differences among themselves. A claimant who is clearly entitled to no-fault benefits should not be forced to hire an attorney merely because the circumstances of his accident create problems of priority among insurers.
 
 [Kalin, id.
 
 at 509-510.]
 

 Because the only dispute concerned Estes’ domicile, and because there is no dispute that Estes was entitled to no-fault benefits, the trial court’s finding that defendants acted unreasonably was not clearly erroneous. We find no error in the award of attorney fees to plaintiffs.
 

 Travelers suggests that attorney fees cannot be awarded to plaintiffs because an attorney is entitled to a reasonable fee for representing a
 
 claimant
 
 and plaintiffs collectively are not a claimant. In support of this suggestion, Travelers relies on
 
 Darnell,
 
 where this Court determined that the Assigned Claims Facility was not a “claimant” and therefore could not recover attorney fees. In
 
 Darnell,
 
 this Court explained:
 

 The statute makes it clear that the attorney who is entitled to fees is the attorney advising and representing the claimant in an action for pip benefits which are overdue. By simply representing the assigned claims facility, it was not representing a “claimant” in an action for personal or property protection insurance benefits which were overdue.
 
 *739
 
 More importantly, the policy underlying the penalty provisions of the no-fault act do not support State Farm’s claim.
 

 It is clear that the purpose of the penalty provisions of the no-fault act was to insure that the injured party was promptly paid. In an effort to encourage such, the Legislature enacted the penalty provisions allowing for both the payment of attorney fees (where payment is unreasonably delayed) and the payment of 12% interest on the overdue payment. We do not believe that the Legislature contemplated payment of such under the circumstances inasmuch as the purpose of the penalty provisions is served by awarding attorney fees to the claimant, not the assigned claims facility representative.
 
 [Id.
 
 at 14-15 (citations omitted).]
 

 In
 
 Darnell,
 
 State Farm was representing the interests of the state Assigned Claims Facility and tried to argue that it was in a different position than if it were representing its own interests as an ordinary no-fault insurer.
 
 Id.
 
 at 13. The present case is clearly distinguishable. Plaintiffs are seeking recovery of costs paid for treating Estes while Estes was in the hospital. Further, payment of attorney fees to plaintiffs does not thwart the purpose behind the penalty provisions of the no-fault act. Plaintiffs, after the death of Estes, sought recovery of money expended for the medical care of Estes and essentially became the claimant. The insurance companies in this case substantially delayed in paying plaintiffs. Thus, requiring these insurance companies to pay attorney fees would fulfill the purpose behind the no-fault act.
 

 Finally, Travelers argues that the claim for attorney fees was barred by the one-year statute of limitations in subsection 3145(1). The trial court disagreed with Travelers’ argument:
 

 It is true that MCL 600.5821(4) does not expressly exempt a hospital’s claims for no-fault attorney fees and interest
 
 *740
 
 from the operations of the statute of limitations or include them in the definition of what claims are exempt. Neither, however, does it require or even suggest that a court scrutinize each item of damages in an action by a hospital to determine whether it is part of the cost of treating a patient. In any event, the statute preserves actions “for the recovery of the cost of maintenance . . . of . . . hospitals.” Attorney fees incurred in an effort to recover the cost of treating a patient constitute part of the cost of maintaining a hospital, as demonstrated by the present case.
 

 Travelers disputes the result reached by the trial court. Travelers asserts that the trial court misinterpreted the statutory language of MCL 600.5821(4), which provides:
 

 Actions brought
 
 in the name of the state of Michigan, the people of the state of Michigan, or any political subdivision of the state of Michigan, or in the name of any officer or otherwise for the benefit of the state of Michigan or any political subdivision of the state of Michigan
 
 for the recovery of the cost of maintenance, care, and treatment of persons in hospitals, homes, schools, and other state institutions are not subject to the statute of limitations
 
 and may be brought at any time without limitation, the provisions of any statute notwithstanding. [Emphasis added.]
 

 Subsection 5821(4) exempts “actions brought” by the state or its political subdivisions from the statute of limitations “for the recovery of the cost of maintenance, care, and treatment of persons in hospitals . . . .” Indeed, statutes of limitation and exemptions apply to causes of action, not to types of damages. Therefore, Travelers’ argument that plaintiffs cannot recover attorney fees because attorney fees are not exempt under the statute is nonsensical. It would be absurd to think that a prevailing party would not be entitled to attorney fees because it was not specifi
 
 *741
 
 cally listed as exempt from the statute of hmitations. Thus, given the longstanding rule of statutory construction, that statutes should be construed to prevent absurd results, injustice, or prejudice to the interests of the public,
 
 Camden v Kaufman,
 
 240 Mich App 389, 395; 613 NW2d 335 (2000), we reject Travelers’ argument.
 

 v
 

 State Farm argues that the trial court erred in concluding that MCL 500.3148(1) allowed the court to order State Farm and Travelers jointly liable for plaintiffs’ attorney fees despite the fact that Travelers was ultimately determined to be the insurer responsible for payment of benefits. We disagree.
 

 In
 
 Kalin, supra,
 
 defendants DAIIE and Michigan Mutual, two insurance companies, each argued that the other was responsible for payment of no-fault benefits to the plaintiff. This Court concluded that defendant DAIIE was the responsible insurer.
 
 Kalin, supra
 
 at 508. However, this Court affirmed the trial court’s decision to require both defendant DAIIE and defendant Michigan Mutual to share equally the plaintiff’s reasonable attorney fees.
 
 Id.
 
 at 509-510.
 

 State Farm argues that
 
 Kalin
 
 was wrongly decided. However, State Farm cites no authority for this proposition. Further, this Court in
 
 Darnell, supra,
 
 relied on
 
 Kalin
 
 to reach the same result. In
 
 Darnell,
 
 defendant Auto-Owners complained that the trial court required it to pay attorney fees, along with defendant Dairyland.
 
 Darnell, supra
 
 at 11. This Court explained:
 

 Initially, we note that, in light of our holding that Auto-Owners improperly rescinded plaintiffs’ policy of insurance
 
 *742
 
 under the facts of the instant case, its argument that it was ultimately correct and therefore justified in denying benefits is inapposite. In any event,
 
 Kalin, supra,
 
 instructs that, even where an insurer prevails on the primary issue on appeal after having attorney fees levied against it pursuant to § 3148, it is not automatically free from liability for the payment of the attorney fees. Problems of priority among insurers should not cause delay in payment of benefits to which the claimant is entitled. . . .
 

 The trial court in the instant case found that defendants “definitely had a place in the priority sections” and that payment should have been made because plaintiff was entitled to no-fault benefits from someone. In light of
 
 Kalin, supra,
 
 we agree. The lower court’s finding of unreasonableness as to Auto-Owners was not clearly erroneous.
 
 [Id.
 
 at 12-13.]
 

 VI
 

 Last, plaintiffs argue on cross appeal that interest should have been ordered at the fixed twelve percent interest rate that is applicable to written instruments pursuant to MCL 600.6013(5) rather than at the floating rate provided in MCL 600.6013(6).
 

 Plaintiffs argue that the twelve percent interest rate contained in subsection 6013(5) applies because an insurance contract is a written instrument. Subsections 6013(5) and (6) provide in part:
 

 (5) For complaints filed on or after January 1, 1987, if a judgment is rendered on a written instrument, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually, unless the instrument has a higher rate of interest. . . .
 

 (6) Except as otherwise provided in subsection (5) and subject to subsection (11), for complaints filed on or after January 1, 1987, interest on a money judgment recovered in
 
 *743
 
 a civil action shall be calculated at 6-month intervals from the date of filing the complaint at a rate of interest that is equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section. Interest under this subsection shall be calculated on the entire amount of the money judgment, including attorney fees and other costs. ...
 

 In
 
 Yaldo v North Pointe Ins Co,
 
 457 Mich 341; 578 NW2d 274 (1998), the Court was presented with the issue whether an insurance contract was a written instrument under subsection 6013(5). The Court remarked:
 

 We note that the Legislature did not define the term “written instrument” when it enacted MCL 600.6013; MSA 27A.6013. Nevertheless, we find the expression clear and unambiguous.
 
 An insurance policy is a written instrument.
 
 We refuse to rewrite the language of the statute effectively to limit “written instrument” to “negotiable instrument.”
 
 [Id.
 
 at 346 (emphasis added).]
 

 The trial court, however, distinguished
 
 Yaldo
 
 on the ground that
 
 Yaldo
 
 involved an insurance policy issued on a land contract. The trial court held that subsection 6013(5) was not applicable, explaining:
 

 The present case indisputably involves a written contract: if the Kings had not entered into a written insurance policy with defendant Travelers, Travelers would not be liable to the Hospital. The Court agrees with Travelers, however, that because the heart of the claim for liability as between the insurers was a function of statute and not of the policy, and neither the hospital nor Mr. Estes was a party to the signed contract, interest on the judgment in the present case should be calculated at the floating interest rate, MCL 600.6013(6).
 

 
 *744
 
 The trial court failed to consider
 
 Auto Club Ins Ass’n v State Farm Ins Cos,
 
 221 Mich App 154; 561 NW2d 445 (1997). In that case, Jennifer Schneider was injured in an automobile accident while she was a passenger in an automobile insured by Auto Club.
 
 Id.
 
 at 157. Jennifer was living with her mother at the time of the accident and her mother did not have no-fault insurance.
 
 Id.
 
 However, Jennifer’s father had no-fault insurance through State Farm and also had medical coverage for Jennifer through a health plan provided by Omega Communications and governed by the Employee Retirement Income Security Act, 29 USC 1001
 
 et seq. Auto Club, supra
 
 at 157-158. In determining which insurer was responsible for coverage, this Court concluded that Auto Club and Omega shared responsibility for Jennifer’s insurance coverage.
 
 Id.
 
 at 160. This Court then went on to consider the appropriate interest rate to be applied when calculating interest and stated:
 

 This Court held in
 
 Yaldo [v North Pointe Ins Co,
 
 217 Mich App 617, 621; 552 NW2d 657 (1996)] that the term “written instrument” contained in § 6013(5) constitutes an agreement or understanding reduced to writing as a means of giving formal expression to an act or contract, which includes an insurance policy. The purpose of the prejudgment interest statute is to compensate the prevailing party for the delay in recovering money damages.
 
 We therefore find that plaintiff’s no-fault plan and Omega’s ERISAbased health-care plan are “written instruments” and that judgment herein is based upon the language contained in those written instruments
 
 .... Therefore, we conclude that the trial court correctly awarded plaintiff twelve percent prejudgment interest....
 
 [Auto Club, supra
 
 at 169-170 (emphasis added and internal citations omitted).]
 

 
 *745
 
 The trial court erred in concluding that judgment in this case was not based on an insurance policy. While the trial court was required to examine the no-fault act to determine which insurer was primarily liable for benefits, that liability would not have existed without the insurance policy. Therefore, the twelve percent interest rate applies. We vacate that part of the order awarding interest under subsection 6013(6) and remand for entry of an order awarding interest under subsection 6013(5).
 

 Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.
 

 [1]
 

 The Assigned Claims Facility was dismissed by stipulation of the parties.
 

 [2]
 

 The court held that State Farm was not liable for interest under the no-fault act because MCL 500.3142(3) awards interest only on payments that are overdue and, because payments from State Farm were not overdue, it was not responsible for interest under the no-fault act.