# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF JACK SWICK, BLAKE A. SWICK, MARIANA K. SWICK, and JACK A. SWICK,

        Plaintiffs-Appellees/Cross-Appellants,

v

FARM BUREAU INSURANCE COMPANY,

        Defendant-Appellant/Cross-Appellee.

UNPUBLISHED
April 26, 2016

No. 324829
Oakland Circuit Court
LC No. 2013-136265-NF

Before: BECKERING, P.J., and OWENS and K. F. KELLY, JJ.

PER CURIAM.

Defendant, Farm Bureau Insurance Company, appeals as of right a judgment for plaintiffs, Estate of Jack Swick and the children of Swick (Blake A. Swick, Mariana K. Swick, and Jack A. Swick), in this action for no-fault benefits following the death of Swick while riding an uninsured motorcycle that was involved in an accident with a motor vehicle insured by defendant. Defendant challenges the trial court's order granting summary disposition to plaintiffs under MCR 2.116(C)(10). Plaintiffs cross-appeal, arguing that the trial court erred in calculating no-fault penalty interest under MCL 500.3142 and in denying no-fault attorney fees under MCL 500.3148(1). We affirm in part, reverse in part, and remand for further proceedings.

## I. MOTORCYCLE OWNERSHIP

Defendant argues that summary disposition was improper because a question of fact existed regarding whether Swick owned the motorcycle he was operating and was precluded from no-fault benefits under MCL 500.3113(b). We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012).

> In evaluating a motion for summary disposition brought under Subrule (C)(10), a reviewing court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Summary disposition is properly granted if the proffered evidence

-1-

fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. [*Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014) (internal citations omitted).]

At the time of Swick's accident, MCL 500.3113 precluded personal protection insurance (PIP) benefits in the following circumstances:

A person is not entitled to be paid personal protection insurance benefits for accidental bodily injury if at the time of the accident any of the following circumstances existed:

(a) The person was using a motor vehicle or motorcycle which he or she had taken unlawfully, unless the person reasonably believed that he or she was entitled to take and use the vehicle.

*(b) The person was the owner or registrant of a motor vehicle or motorcycle involved in the accident with respect to which the security required by section 3101 or 3103 was not in effect.*

(c) The person was not a resident of this state, was an occupant of a motor vehicle or motorcycle not registered in this state, and was not insured by an insurer which has filed a certification in compliance with section 3163. [Emphasis added.]

The exclusion in MCL 500.3113(b) is at issue in this case. That exclusion references the security required by MCL 500.3103(1), which provides:

An owner or registrant of a motorcycle shall provide security against loss resulting from liability imposed by law for property damage, bodily injury, or death suffered by a person arising out of the ownership, maintenance, or use of that motorcycle. The security shall conform with the requirements of section 3009(1).

It is undisputed that Swick did not maintain the security required by MCL 500.3103. Also, it is undisputed that Swick was not the "registrant" of the motorcycle involved in the accident. The parties instead dispute whether Swick was an "owner" of the motorcycle under the no-fault act. See former MCL 500.3113(b) (excluding PIP benefits for the "owner" or "registrant" of a motorcycle who fails to obtain the requisite security). At the time of the accident in 2012, MCL 500.3101(2)(h) limited the definition of "owner" of a motorcycle to "[a] person who holds the legal title to a vehicle . . . . " MCL 500.3101(2)(h)(ii).[1] See also *Auto-Owners Ins Co v Hoadley*, 201 Mich App 555, 561; 506 NW2d 595 (1993) ("The Legislature

---

[1] We note that, after the accident, the definition of "owner" in MCL 500.3101 was amended by 2014 PA 492 and it was moved to MCL 500.3101(2)(k). The parties do not contend that the amended definition is relevant to this appeal, nor do we find it applicable.

provided a specific definition of the word 'owner' and specifically chose which portions of that definition were to apply to motor vehicles only and which portions of the definition were to apply to all vehicles, including motorcycles." ). As plaintiffs argue on appeal, the concept of legal title is defined in the motor vehicle code, specifically MCL 257.233(8) and (9), which provide:

> (8) The owner shall indorse on the certificate of title as required by the secretary of state an assignment of the title with warranty of title in the form printed on the certificate with a statement of all security interests in the vehicle or in accessories on the vehicle and deliver or cause the certificate to be mailed or delivered to the purchaser or transferee at the time of the delivery to the purchaser or transferee of the vehicle. The certificate shall show the payment or satisfaction of any security interest as shown on the original title.[2]

> (9) Upon the delivery of a motor vehicle and the transfer, sale, or assignment of the title or interest in a motor vehicle by a person, including a dealer, the effective date of the transfer of title or interest in the vehicle is the date of signature on either the application for title or the assignment of the certificate of title by the purchaser, transferee, or assignee.

With MCL 257.233 as a backdrop, this Court has expressly held that "[l]egal title to a motorcycle passes when the transferor delivers the motorcycle and a properly assigned certificate of title to the transferee." *Auto Club Ins Ass'n v Sarate*, 236 Mich App 432, 436; 600 NW2d 695 (1999), citing MCL 257.233. Further, our caselaw supports plaintiffs' argument that, without formal transfer of title according to these statutory requirements, ownership does not transfer. See, e.g., *Basgall v Kovach*, 156 Mich App 323, 327; 401 NW2d 638 (1986), and *Messer v Averill*, 28 Mich App 62, 66; 183 NW2d 802 (1970).

In this case, Swick took possession of the certificate of title and the motorcycle several months before the accident, but the certificate of title demonstrated that he did not sign the document as the purchaser. MCL 257.233(9). The document not only excludes Swick's signature, but also excludes other information about the purchaser, the sale (date and price), and an odometer reading, which are required by MCL 257.233a(1). Robert Deller, the person who sold the motorcycle for his father, testified that the incomplete certificate of title was authentic.[3] Accordingly, there was no genuine issue of material fact regarding whether the statutory requirements for an effective transfer of title occurred. Absent a genuine issue of material fact

---

[2] We note that 2014 PA 290 amended MCL 257.233(8) after the relevant events in this case transpired; however, that amendment has no bearing on our analysis, and we refer to the version of the statute that was in effect at the time of the transaction at issue.

[3] Any confusion Robert initially expressed about whether Swick signed the assignment of title does not create a question of fact. Even Robert acknowledged that he could not remember whether Swick signed the assignment of title, and that he may have been remembering Swick signing the receipt instead of the title.

that legal title of the motorcycle was not effectively transferred to Swick, he was not precluded from no-fault benefits under MCL 500.3113(b), and the trial court did not err by granting plaintiffs' motion for summary disposition on this basis.[4]

## II. PRECLUSION OF PIP BENEFITS

Next, defendant argues that PIP benefits should have nevertheless been precluded by MCL 257.658. We disagree.

"When a statute's language is clear and unambiguous, we must apply the terms of the statute to the circumstances of the particular case . . . and we will not read words into the plain language of the statute." *PIC Maintenance, Inc v Dep't of Treasury*, 293 Mich App 403, 410-411; 809 NW2d 669 (2011). The Legislature is presumed to be aware of and legislate in harmony with existing laws when enacting new laws. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). The omission of a provision from one part of a statute that is included in another part of a statute must be construed as intentional. That is, we "cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). Two statutes that relate to the same subject or share a common purpose are in *pari materia* and must be read together. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). The goal of the *in pari materia* rule is to give effect to the legislative purpose found in the harmonious statutes. *Id*.

MCL 257.658 describes the circumstances under which a person operating or riding on a motorcycle is not required to wear a crash helmet:

> (5) The following conditions apply to a person 21 years of age or older operating or riding on a motorcycle, as applicable:
>
> (a) A person who is operating a motorcycle is not required to wear a crash helmet on his or her head if he or she has had a motorcycle endorsement on his or her operator's or chauffeur's license for not less than 2 years or the person passes a motorcycle safety course conducted under section 811a or 811b and satisfies the requirements of subdivision (c).

---

[4] We are not persuaded that, under these facts, either the non-binding unpublished decision cited by defendant, see MCR 7.215(C)(1), or *Botsford Gen Hosp v Citizens Ins Co*, 195 Mich App 127, 133; 489 NW2d 137 (1992), where the ownership of a motor vehicle was at issue, not whether legal title of a motorcycle was effectively transferred (i.e., application of former MCL 500.3101(2)(h)(i) and (iii), rather than MCL 500.3101(2)(h)(ii)), required the jury to decide this question. In addition, because defendant presented the same arguments in its motion for reconsideration, the trial court did not abuse its discretion by denying that motion. MCR 2.119(F)(3).

(b) A person who is riding on a motorcycle is not required to wear a crash helmet on his or her head if the person or the operator of the motorcycle satisfies the requirements of subdivision (c).

(c) A person who is operating a motorcycle and a person who is riding on a motorcycle are not required to wear crash helmets on their heads if the operator of the motorcycle or the rider has in effect security for the first-party medical benefits payable in the event that he or she is involved in a motorcycle accident, as provided in section 3103 of the insurance code of 1956, 1956 PA 218, MCL 500.3103, in 1 of the following amounts, as applicable:

(i) A motorcycle operator without a rider, not less than $20,000.00.

(ii) A motorcycle operator with a rider, not less than $20,000.00 per person per occurrence. However, if the rider has security in an amount not less than $20,000.00, then the operator is only required to have security in the amount of not less than $20,000.00.

Again, MCL 500.3103(1) describes the security required for an owner or registrant of a motorcycle. MCL 500.3103(2) describes the security for payment of PIP benefits that an insurer shall offer to the owner or registrant of a motorcycle:

Each insurer transacting insurance in this state which affords coverage for a motorcycle as described in subsection (1) also shall offer, to an owner or registrant of a motorcycle, security for the payment of first-party medical benefits only, in increments of $5,000.00, payable in the event the owner or registrant is involved in a motorcycle accident. An insurer providing first-party medical benefits may offer, at appropriate premium rates, deductibles, provisions for the coordination of these benefits, and provisions for the subtraction of other benefits provided or required to be provided under the laws of any state or the federal government, subject to the prior approval of the commissioner. These deductibles and provisions shall apply only to benefits payable to the person named in the policy, the spouse of the insured, and any relative of either domiciled in the same household.

Although the plain language of MCL 500.3103 does not require an "owner or registrant" of a motorcycle to purchase coverage for PIP benefits, any operator or rider who chooses not to wear a crash helmet must have in effect security for these benefits under MCL 257.658(5)(c). As the trial court found, however, nothing in the plain language of these statutes actually precludes an uninsured, helmetless operator or rider from collecting PIP benefits.[5] Defendant urges this Court to read the no-fault act and the Michigan vehicle code *in pari materia* and conclude that

_____

[5] In fact, the only penalty for the failure to wear a crash helmet appears in MCL 257.625(1), which makes the failure to wear a crash helmet a "civil infraction"; the statute makes no mention at all of PIP benefits.

-5-

the Legislature intended to preclude these benefits even if it did not express that intent in MCL 257.658 and MCL 500.3103. But we reject defendant's argument because, as discussed earlier, the version of MCL 500.3113(b) in effect at the time of the accident only precluded owners or registrants who had failed to maintain the security for PIP benefits from collecting them. The statute did not preclude such payment for other operators and riders of a motorcycle. Again, our Legislature's omissions are presumed to be intentional. *Farrington*, 443 Mich at 248. Regardless of the Legislature's intent to require helmetless operators and riders to purchase security for PIP benefits under MCL 257.658(5)(c), it did not preclude them from collecting PIP benefits if they nevertheless failed to satisfy this requirement. Thus, any evidence that Swick was not wearing a helmet did not create a question of fact regarding his entitlement to PIP benefits, and the trial court properly rejected this defense below.[6]

## III. NO-FAULT INTEREST AND ATTORNEY FEES

Plaintiffs argue on cross-appeal that the trial court clearly erred by finding that benefits were not overdue until October 16, 2014, 30 days after its order denying defendant's motion for reconsideration, for purposes of the penalty interest calculation under MCL 500.3142. Plaintiffs also argue that the trial court erred by denying its motion for attorney fees pursuant to MCL 500.3148(1). We agree regarding the penalty interest, but disagree regarding the attorney fees.

This Court reviews for clear error a trial court's decision to award or deny penalty interest under MCL 500.3142, and to award or deny attorney fees under MCL 500.3148(1). See *Roberts v Farmers Ins Exch*, 275 Mich App 58, 66; 737 NW2d 332 (2007). Clear error exists "if the reviewing court has a definite and firm conviction that a mistake has been committed[.]" *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "The question of what constitutes reasonableness is one of law that we review de novo. But whether the denial of no-fault benefits was reasonable under the facts of the case is a question of fact that we review for clear error." *Perkins v Auto-Owners Ins Co*, 301 Mich App 658, 668; 837 NW2d 32 (2013).

## A. INTEREST

MCL 500.3142(2) provides that "[p]ersonal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." "An overdue payment bears simple interest at the rate of 12% per annum." MCL 500.3142(3).

The purpose of MCL 500.3142 "is to promptly and adequately compensate persons who were injured in a motor vehicle mishap." *Nash v Detroit Auto Inter-Ins Exch*, 120 Mich App 568, 572; 327 NW2d 521 (1982). "The 12 percent interest provision is intended to penalize the recalcitrant insurer rather than compensate the claimant." *Attard v Citizens Ins Co of America*, 237 Mich App 311, 320; 602 NW2d 633 (1999) (citation and emphasis omitted). A carrier who

---

[6] In light of this conclusion, we decline to address whether the trial court correctly ruled in the alternative that this defense regarding Swick's failure to wear a helmet was an affirmative defense that was waived by defendant's failure to raise it in its responsive pleading.

rejects a claim does so at its own risk. *Nash*, 120 Mich App at 572. "To recover interest, a plaintiff is not required to prove that the defendant acted arbitrarily or unreasonably delayed in payment of benefits." *Regents of Univ of Mich v State Farm Mut Ins Co*, 250 Mich App 719, 735; 650 NW2d 129 (2002). MCL 500.3142 "only requires that the insured present the insurer with reasonable proof of loss. If the insurer does not pay the claim within 30 days after receiving this proof, it becomes liable for interest." *Fortier v Aetna Cas & Surety Co*, 131 Mich App 784, 793; 346 NW2d 874 (1984).

The trial court did not provide any explanation for its decision that reasonable proof of the fact and the amount of loss sustained was not provided to defendant until its motion for reconsideration was denied on September 16, 2014. And nothing in the record supports this conclusion. Rather, the parties do not dispute that a loss occurred—specifically, that Swick was killed. Plaintiffs allege that proof of the amount of lost income, as well as funeral and burial expenses, was submitted to defendant on January 27, 2014, and proof of the cost of replacement services was provided on April 28, 2014. These documents bear dates and costs consistent with plaintiffs' arguments and were attached to plaintiffs' motion for penalty interest. In response to the motion, defendant did not dispute that it received these documents at the times plaintiffs claimed they were provided. Aside from arguing that it had good cause to deny the claim because there was a question of fact whether Swick was precluded from benefits because he owned the motorcycle and was not wearing a helmet,[7] defendant's only argument regarding proof of the amount of loss, which was not addressed by the trial court, was that the submission of Swick's pay stubs was insufficient under MCL 500.3108 because Swick might not have been using all of his income to support his children. Defendant argued that it did not receive reasonable proof of the amount of loss until the mother of Swick's children, Teresa Sturgeon, was deposed on July 16, 2014, about Swick's support of the children. Even assuming defendant's argument is correct, it follows that the latest date that proof of the amount of loss could have been provided was July 16, 2014. Therefore, the trial court's finding that proof of the fact and the amount of loss sustained was not provided until September 16, 2014 is clearly erroneous. Accordingly, we reverse the portion of the trial court's judgment stating that PIP benefits did not become overdue until October 16, 2014, and remand for a determination of the date that plaintiffs provided proof of the amount of loss and, in line with that determination, recalculation of an appropriate amount of no-fault penalty interest under MCL 500.3142(2) and (3), consistent with this opinion.[8]

---

[7] Defendant's arguments regarding its good cause for denying the claim are irrelevant to the penalty interest determination. See *Davis v Citizens Ins Co of America*, 195 Mich App 323, 328; 489 NW2d 214 (1992) ("Penalty interest must be assessed against a no-fault insurer if the insurer refused to pay benefits and is later determined to be liable, irrespective of the insurer's good faith in not promptly paying the benefits"). See also *Regents of U of M*, 250 Mich App at 735 ("To recover interest, a plaintiff is not required to prove that the defendant acted arbitrarily or unreasonably delayed in payment of benefits").

[8] On remand, the trial court should consider whether the proof of lost income based only on the pay stubs was reasonable considering *Williams v AAA Mich*, 250 Mich App 249, 267; 646 NW2d

## B. ATTORNEY FEES

MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

In other words, the no-fault act establishes two prerequisites for an award of attorney fees under the act:

> First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). [*Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008).]

See also *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012).

In *Ross v Auto Club Group*, 481 Mich 1, 11; 748 NW2d 552 (2008), our Supreme Court explained the purpose of attorney fees under the no-fault act:

> The purpose of the no-fault act's attorney-fee penalty provision is to ensure prompt payment to the insured. Accordingly, an insurer's refusal or delay places a burden on the insurer to justify its refusal or delay. The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty. [Citations omitted.]

In *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490, 491; 775 NW2d 151 (2009), the plaintiff hospital provided care for the driver of an uninsured vehicle after she was injured in an accident. The trial court granted the plaintiff's motion for summary disposition against the insurer who had denied the claim, reasoning that the driver was an owner precluded from benefits under MCL 500.3113. *Id.* The facts discerned from interviews of the driver and her boyfriend revealed that the boyfriend had title to the vehicle and stored it at his home, but canceled its insurance and was only using another car. *Id.* at 491-492. The driver used the vehicle (primarily for grocery shopping) approximately seven times over the course of about a month, she had to get permission and the keys from her boyfriend to use the vehicle (permission may never have been denied), and she fueled the vehicle, but the boyfriend was otherwise

---

476 (2002) (the statute requires reasonable, not exact, proof, and if a defendant desires to challenge or investigate the proof provided, it should conduct an investigation within the 30-day grace period).

responsible for maintenance. *Id*. at 492. Even though the trial court ultimately concluded that the driver was not an owner of the vehicle, the trial court denied attorney fees for the plaintiff under MCL 500.3148. *Id.* at 494-495. This Court concluded that the trial court's decision did not amount to clear error because ownership was reasonably in dispute at the time of the initial denial. *Id.*

Again, under the first prerequisite for no-fault attorney fees, the benefits are overdue 30 days after defendant received reasonable proof of the fact and of the amount of loss sustained. On remand, the trial court must determine when the benefits became overdue. But regardless of this date, the trial court did not clearly err in finding that when defendant initially refused to pay, its decision was not unreasonable. Just as in *Detroit Med Ctr*, defendant could justify its refusal by showing that it was the product of legitimate factual uncertainty regarding ownership. The police report prepared at the time of the accident in 2012 includes a statement from Swick's girlfriend that Swick bought the motorcycle, but plaintiffs submitted the Secretary of State documentation to defendant in August 2013 that Swick never registered the motorcycle. Although plaintiffs possessed the certificate of title, they had not produced it at the time of the initial denial to establish that Swick did not own the motorcycle. They also had not yet produced the certificate of title when they subsequently provided proof of the amount of loss, which they claim occurred in January and April of 2014. Given these factual disparities, we are not left with a definite and firm conviction that the trial court made a mistake in concluding that there was a bona fide factual disparity at the time of the denial of benefits.

Without any citation to authority, plaintiffs argue that even if the initial refusal was reasonable, defendants have now unreasonably delayed in making the payment after the trial court ruled, as a matter of law, that they were entitled to benefits. But the decision whether to award no-fault attorney fees is not based on the ultimate determination whether a plaintiff is entitled to benefits, which may be unfavorable to the insurer. Instead, the question is whether the insurer reasonably denied benefits at the time of its initial decision. See *Brown*, 298 Mich App at 691 ("[t]he trier of fact's ultimate decision that the insurer owed benefits to the claimant does not alone establish the unreasonableness of the insurer's initial decision . . . [r]ather, the court must examine the circumstances as they existed at the time the insurer made the decision, and decide whether that decision was reasonable at that time"), and *Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691, 694-695; 760 NW2d 574 (2008) ("[w]hether attorney fees are warranted under the no-fault act depends not on whether coverage is ultimately determined to exist, but on whether the insurer's initial refusal to pay was unreasonable"). See also *Ross*, 481 Mich at 11, and *Moore*, 482 Mich at 525 ("an insurer's initial refusal to pay benefits under Michigan's no-fault insurance statutes can be deemed reasonable even though it is later determined that the insurer was required to pay those benefits."). Plaintiffs' reliance on the language in MCL 500.3148(1) that the court can find that the insurer either "unreasonably refused to pay the claim or unreasonably delayed in making proper payment" does not change the fact that the initial decision is critical to this analysis. Regardless of whether an insurer initially refused to pay and never wavered, or initially refused to pay and later remitted payment, attorney fees are to ensure prompt payment to the insured. *Ross*, 481 Mich at 11. Therefore, only an insurer who unreasonably makes an initial decision to deny prompt payment risks paying attorney fees. The trial court did not clearly err by denying the motion for attorney fees under MCL 500.3148(1).

## IV.  CONCLUSION

In sum, we affirm the trial court's order granting plaintiffs' motion for summary disposition, and affirm the trial court's denial of no-fault attorney fees, but reverse the portion of the judgment regarding penalty interest and remand for proceedings pertaining to penalty interest consistent with this opinion.  We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly